# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **T.S., R.S., B.S., and A.S.**

**No. 19-0835** (Kanawha County 18-JA-57, 18-JA-58, 18-JA-59, and 18-JA-60)

## MEMORANDUM DECISION

Petitioner Father D.S., by counsel Joseph H. Spano Jr., appeals the Circuit Court of Kanawha County's June 28, 2018, order terminating his parental rights to T.S., R.S., B.S., and A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating services without justification and terminating his parental rights without first granting him an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner originally listed different assignments of error in his brief. However, he seems to have abandoned those arguments as he did not address them in the argument section of his brief. The above-listed assignments of error have been modified to more closely address petitioner's stated arguments.

In February of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother of T.S.[3] The DHHR alleged that T.S. disclosed physical abuse by the mother to his teacher and other school personnel. Specifically, T.S. disclosed that he had "talked back" to his mother while he was preparing for school and that she threatened to kill him, hit him in the head, and attempted to strangle him by wrapping her hands around his throat. Several school personnel corroborated the child's disclosures and noted that he was crying extensively, was inconsolable, and had broken blood vessels around his eyes, which could have been due to either the mother's abuse or the child's crying. A Child Protective Services ("CPS") worker interviewed T.S., who made the same disclosures as noted above. The child further disclosed that his mother hit him in the head about thirty times and would frequently make him take over her responsibilities, such as laundry. The child also disclosed that petitioner had previously hit him and abused drugs. The CPS worker interviewed petitioner in response to the child's disclosures. Petitioner admitted he previously had an alcohol abuse problem and that he had spanked T.S. in the past, but did not leave any marks on him. Based on these facts, the DHHR concluded that petitioner had substance abuse issues that prevented him from being an appropriate parent and that he had been physically violent to one or more of his children in the past. Services such as parenting and adult life skills classes and supervised visits were put in place for petitioner following the preliminary hearing.

In March of 2018, the DHHR filed an amended petition against petitioner, alleging that he was involved in a domestic violence incident following the filing of the initial petition. According to the DHHR, petitioner head-butted his stepmother, put a gun in her mouth, and strangled her to the point of unconsciousness. Petitioner was charged with malicious or unlawful assault, wanton endangerment, unlawful restraint, domestic battery, domestic assault, brandishing, interfering with emergency communications, and four counts of strangulation.

The circuit court held an adjudicatory hearing in April of 2018. Petitioner initially began to testify, but refused to comment on his pending criminal case. B.S.M., the nonabusing mother of petitioner's three younger children, testified that petitioner was physically abusive and that he currently had no relationship or contact with R.S., B.S., and A.S. due to his violent behavior and alcohol abuse. B.S.M. also testified that petitioner did not consistently pay child support and that she only recently received some child support when it was taken out of a settlement won by petitioner. A CPS worker testified regarding the allegations contained in the petitions. She stated that, during her initial investigation, petitioner admitted to past issues with alcohol abuse and domestic violence, but claimed that he no longer abused alcohol. However, the CPS worker opined that it sounded like petitioner had been drinking when she spoke to him and that he smelled of alcohol when she later served him with the petition. At the close of evidence, the circuit court found that petitioner committed domestic violence in the presence of the children and was facing criminal charges for his violent behavior. The circuit court further found that petitioner abused alcohol and other substances, which negatively affected his ability to parent the children. Lastly, the circuit court found that petitioner willingly failed to pay child support for the younger children in a timely manner. Based on these findings, the circuit court adjudicated petitioner as an abusing

---

[3]Petitioner has four biological children, all of whom are at issue on appeal. T.G. is the mother of T.S., and B.S.M. is the mother of R.S., B.S., and A.S. B.S.M. was a nonabusing parent during the proceedings below.

2

parent. The circuit court suspended petitioner's supervised visits with the children but continued all other services.

In May of 2018, the circuit court held a dispositional hearing. A CPS worker testified that the DHHR was recommending termination of petitioner's parental rights due to his severe issues with domestic violence. The CPS worker noted that petitioner received services during the proceedings, yet allegedly committed a very serious violent crime against his stepmother following the petition's filing. Further, the worker reported that T.S. "tend[ed] to mimic a lot of the behaviors he has witnessed in the home" and "acts out or gets aggressive" because that is "all [T.S.] has known." The CPS worker also testified that T.S. harbored a lot of anger towards petitioner for his actions and that petitioner did not have a relationship with B.S., R.S., and A.S. The circuit court noted that the DHHR provided, or offered, remedial and reunification services to petitioner, such as psychological evaluations, supervised visits, parenting and adult life skills classes, random drug screens, substance abuse evaluations and treatment, and transportation assistance. Based on the testimony adduced, as well as the evidence presented at prior hearings, the circuit court found that petitioner failed to follow through with a reasonable family case plan or other rehabilitative efforts and that he was habitually addicted to alcohol to the extent that it impaired his parenting skills. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals that June 28, 2018, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating DHHR-provided services when he produced negative drug screens throughout the proceedings and he was unable

---

[4]T.S.'s mother has complied with her improvement period and is currently undergoing a trial reunification with the child. The mother of R.S., B.S., and A.S., is a nonabusing parent, and the permanency plan for those children is to remain in her care.

to participate in services at times only because he was incarcerated for an "alleged" domestic abuse charge. Petitioner contends that the circuit court erroneously used his incarceration as a basis for terminating his services during the proceedings. Petitioner also claims that his counsel was ineffective for failing to move the circuit court for an improvement period.

However, petitioner's brief is inadequate as it lacks citation to the record or applicable law. Indeed, petitioner fails to provide a single citation in support of either of these arguments, and his very brief suggestion that his counsel was ineffective for failing to request an improvement period is not accompanied by any legal analysis. Petitioner's failure to provide any support for his argument is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides as follows:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Accordingly, we decline to address these arguments on appeal.

Petitioner next assigns as error the circuit court's termination of his parental rights without first granting him an improvement period. Petitioner contends that he demonstrated that he was likely to participate in an improvement period because he was compliant with services until he was imprisoned. After being released on bond, petitioner attended all hearings and asked to continue receiving services. However, petitioner contends that further services were denied based upon his inability to comply with any services during his incarceration. Petitioner notes that he never failed a drug screen during the proceedings. Further, while petitioner admits that he previously had an alcohol-abuse problem, he claims that he has "since begun monitoring his intake of alcohol and is no longer an abuser." Lastly, petitioner contends that there was insufficient evidence to terminate his parental rights absent his participation in an improvement period. According to petitioner, his underlying criminal case is still ongoing and there is no evidence that petitioner's corporal punishment of T.S. was excessive. Moreover, petitioner claims his parenting skills are no longer impaired by his previous alcohol abuse. We disagree.

We have previously held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) (It is within the court's discretion to grant an improvement period within the applicable statutory requirements.").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. Following the preliminary hearing, several services were put in place for petitioner. However, as of the dispositional hearing, the circuit court found that petitioner had failed to adequately comply with his family case plan or rehabilitative efforts. Indeed, testimony at the dispositional hearing indicated that petitioner engaged in domestic violence against his stepmother and was charged with a myriad of crimes as a result, including four counts of strangulation. To the extent petitioner argues that the circuit court erred in denying him services on the basis of his incarceration, we find that his argument is without merit. The record reveals that petitioner was incarcerated for approximately two weeks before he was released on bond, and the circuit court continued all services except supervised visitation after the adjudicatory hearing. Moreover, petitioner fails to cite to any portion of the record wherein he rebutted the CPS worker's testimony regarding his alcohol abuse. In sum, petitioner fails to demonstrate that the circuit court abused its discretion in not affording him an improvement period, especially given the fact that petitioner was provided numerous services throughout the proceedings but simply failed to adequately comply with said services. Therefore, we find no error.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when the "parent . . . ha[s] habitually abused or [is] addicted to alcohol . . . to the extent that proper parenting skills have been seriously impaired and the person . . . ha[s] not responded to or followed through the recommended and appropriate treatment" or when "the abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[ren]." W. Va. Code §§ 49-4-604(b)(1) and (3).

The evidence set forth above also supports the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare. The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help and that he failed to follow through with services designed to address the conditions of abuse and neglect. At the dispositional hearing, evidence was presented that petitioner continued to engage in domestic violence and that T.S. mimicked aggressive behavior from having witnessed such behavior in the home. Further, the circuit court found that petitioner was habitually addicted to alcohol, which impaired his parenting skills. Moreover, the circuit court found that termination was in the children's best interests. This finding was supported by evidence that petitioner had no relationship with the three younger children and that T.S. harbored anger toward petitioner for his actions. Accordingly, there was adequate evidence upon which to base the termination of petitioner's parental rights.

Although petitioner argues that his pending criminal case pending should not have been used against him, we note that petitioner refused to testify regarding the matter and the circuit court noted that it could take a negative inference regarding that refusal. We have previously held that,

5

in an abuse and neglect proceeding, an individual's silence may be used as affirmative evidence of that person's culpability. *See* Syl. Pt. 2, *In re K.P.*, 235 W. Va. 221, 772 S.E.2d 914 (2015). To the extent petitioner claims that the matter should have been continued to allow for the resolution of this criminal case, our rules governing child abuse and neglect proceedings provide that "[u]nder no circumstances shall a child abuse and neglect proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." W.Va. R. P. for Child Abuse and Neglect Proc. 5.

Moreover, while petitioner argues that he should have been granted a less-restrictive alternative to the termination of his parental rights, such as an improvement period, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings remain ongoing with regard to T.S.'s mother, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 28, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison